ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| MARÍA VICTORIA BERRÍOS ROSA<br><br>Parte Apelada<br><br><br>v.<br><br><br>FARMACIA SAN CARLOS III, INC.; MULTINATIONAL INSURANCE CO.; **REINALDO NAVARRO CAUSSADE**; COMPAÑÍA DE SEGUROS XYZ; **INVERSIONES NAVARRO, INC.**; COMPAÑÍA DE SEGUROS CDE; JANE ROE y RICHARD ROE<br><br>Parte Apelante<br><br><br><br>RODNY NAVARRO GONZÁLEZ<br><br>Tercero Demandado | TA2026AP00616 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br><br>Caso Núm.: GM2023CV00195<br><br><br>Sala: 303<br><br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Romero García, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2026.

Compareció ante este Tribunal la parte apelante, el Sr. Reinaldo Navarro Caussade (en adelante, el "señor Navarro Caussade") e Inversiones Navarro Inc. (en adelante, "Inversiones") (en adelante y en conjunto, los "Apelantes"), mediante un mal denominado recurso de *certiorari* presentado el 11 de junio de 2026 y que acogemos como una apelación. Nos solicitaron la revocación de la *Sentencia Parcial* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Guayama (en adelante, "TPI"), el 18 de mayo de 2026. Mediante el referido dictamen, el TPI declaró "Ha Lugar" la "**Solicitud de Sentencia**" presentada por

Farmacia San Carlos III h/n/c, Farmacia Carlos (en adelante, la "Farmacia"), Multinational Company y Rodny Navarro González (en adelante, "Navarro González").

Por los fundamentos que expondremos a continuación, *revocamos* la *Sentencia Parcial* apelada.

**I.**

El caso de epígrafe tuvo su inicio el 15 de marzo de 2023, con la presentación de una "**Demanda**" por parte de la Sra. María Victoria Berríos Rosa (en adelante, la señora "Berríos Rosa" o "Apelada") sobre daños y perjuicios en contra de la Farmacia y otros codemandados de nombres desconocidos. Mediante la misma, alegó que, el 7 de febrero de 2023, estacionó su vehículo en el área provista para ello frente a la Farmacia y que, al bajarse de su auto, tropezó con un desnivel que existía en el piso, lo cual provocó que perdiera el balance, impactara con su hombro derecho la pared que ubicaba en la entrada de la Farmacia y cayera en el piso.

Sostuvo que, como consecuencia de dicha caída, sufrió múltiples golpes en distintas partes del cuerpo, incluyendo su brazo derecho, por lo que tuvo que ser asistida por empleados del establecimiento, quienes llamaron a una ambulancia para que fuera transportada a la sala de emergencias del Centro de Salud Familiar Dr. Julio Palmieri Ferri. Explicó que, tras recibir tratamiento médico, fue referida a un ortopeda, quien le diagnosticó una fractura múltiple del húmero derecho. Adujo que, por la magnitud de dicha fractura, tuvo que ser sometida a una complicada operación, la cual requirió 18 puntos de sutura. Agregó, además, que sufre de fuertes dolores en su rodilla izquierda y de espalda desde la ocurrencia del mencionado accidente.

En vista de lo anterior, le solicitó al Tribunal que declarara "Ha Lugar" su petición y, en consecuencia, ordenara el pago de una suma no menor de $100,000.00 por los daños físicos ocasionados y una cifra no menor de $50,000.00 por las angustias mentales sufridas. El 18 de abril de 2023, la "**Demanda**" fue enmendada a los fines de acumular como codemandada a la compañía aseguradora, Multinational Insurance Company (en adelante, "Multinational").

Así las cosas, el 27 de junio de 2023, la Farmacia presentó su "**Contestación a Demanda Enmendada**" mediante la cual rechazó la mayoría de las alegaciones expuestas en su contra e incluyó, entre otras, las siguientes defensas afirmativas: (1) la causa próxima que ocasionó el accidente era atribuible exclusivamente a la señora Berríos Rosa; (2) la doctrina de responsabilidad absoluta y/o responsabilidad sin culpa no aplicaba en el presente caso (3) no se configuraron los elementos de responsabilidad extracontractual; (4) la Apelada no mitigó los daños y (5) la "**Demanda**" podría estar prescrita.

En este contexto, el 27 de febrero de 2024, la señora Berríos Rosa presentó una "**Segunda Demanda Enmendada**" a los fines de acumular al señor Navarro Caussade como codemandado. De igual forma, el 19 de marzo de 2024, la referida "**Demanda**" fue enmendada para incluir al señor Navarro González como codemandado. El 3 de abril de 2024, la Apelante presentó una moción intitulada "**Escrito Solicitando Tercera Enmienda a la Demanda y de Desistimiento Sin Perjuicio en Cuanto al Sr. Reinaldo Navarro**". En respuesta, el TPI emitió una *Sentencia Parcial* mediante la cual decretó el archivo de la acción civil presentada en contra del señor Navarro Caussade, sin perjuicio.

Más adelante, el 26 de junio de 2024, la Apelante presentó moción intitulada "**Escrito Solicitando Cuarta Enmienda a la Demanda y de Desistimiento sin Perjuicio en Cuanto al Sr. Rodney Navarro González**" a través de la cual solicitó incluir nuevamente al señor Navarro Caussade como codemandado y desistir sin perjuicio en cuanto a las causas de acción instadas en contra del señor Navarro González. Así pues, al día siguiente, el foro a quo dictó Orden mediante de la cual autorizó la enmienda y acumulación al pleito del señor Navarro Caussade. Posteriormente, el 9 de julio de 2024, el TPI dictó *Sentencia Parcial* declarando "Ha Lugar" el desistimiento de la acción contra el señor Navarro González, sin perjuicio.

En estas circunstancias, el 25 de marzo de 2026, la Farmacia, Multinational y el señor Navarro González presentaron una "**Solicitud de Sentencia Sumaria**" en la que argumentaron que procede la resolución sumaria parcial del presente pleito por no existir controversias de hechos medulares en controversia. En detalle, arguyeron que el incidente ocurrió en las afueras del edificio donde ubica el local arrendado por la Farmacia y que la alegada condición peligrosa es un elemento

estructural bajo la jurisdicción y responsabilidad exclusiva del arrendador, el señor Navarro Caussade. Señaló, además, que la caída objeto de la presente controversia no se encuentra relacionada con las funciones y trabajos de la farmacia. A tono con lo anterior, le solicitó al TPI que declarara "Ha Lugar" su petición y, en consecuencia, desestimara con perjuicio las reclamaciones instadas en su contra. En reacción a ello, el 30 de marzo de 2026, el señor Navarro Caussade e Inversiones presentaron una moción intitulada "**Réplica a Moción de Desestimación**" (en adelante, "Oposición") mediante la cual afirmaron que, a la fecha de la alegada ocurrencia de los eventos, el inmueble en cuestión se encontraba bajo la posesión y el control total y exclusivo del señor Navarro González. Igualmente, mencionó que las partes suscribieron un contrato mediante el cual el señor Navarro González se obligó a mantener la propiedad inmueble segura para sus clientes y eximió a la parte arrendadora de toda responsabilidad por cualquier accidente que surgiera en la referida propiedad. En armonía con ello, le solicitó al Tribunal que declarara "No Ha Lugar" la "**Solicitud de Sentencia Sumaria**".

Finalmente, el 18 de mayo de 2026, el foro de instancia dictó *Sentencia Parcial* declarando "Ha Lugar" la "**Solicitud de Sentencia Sumaria**" presentada por la Farmacia, Multinational y el señor Navarro González. En consecuencia, desestimó, con perjuicio, las causas de acción instadas en su contra. Insatisfecho con ello, el 15 de junio de 2026, los Apelantes acudieron ante este Tribunal mediante el recurso de epígrafe, señalando los errores que se detallan a continuación:

PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR CON PERJUICIO LA DEMANDA PRESENTADA CONTRA FARMACIA SAN CARLOS III H/N/C FARMACIA SAN CARLOS, MULTINATIONAL INSURANCE COMPANY Y LA DEMANDA CONTRA TERCERO PRESENTADA CONTRA RODNY NAVARRO GONZÁLEZ, LIBERÁNDOLOS INDEBIDAMENTE DE RESPONSABILIDAD, SIN BRINDAR A LA PARTE DEMANDANTE CONTRA COPARTE Y TERCERA DEMANDANTE LA OPORTUNIDAD DE PRESENTAR PRUEBA A SU FAVOR NI DE CONTRAINTERROGAR LA PRUEBA PRESENTADA EN SU CONTRA.

SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA CONTRA COPARTE Y LA DEMANDA CONTRA TERCERO MEDIANTE UNA ADJUDICACIÓN DE HECHOS EN CONTROVERSIA, ESPECÍFICAMENTE SOBRE LA RESPONSABILIDAD CONTRACTUAL DE ESTOS EN VIRTUD DEL CONTRATO

19 PARTES, SIN LA CELEBRACIÓN DE UNA VISTA EVIDENCIARIA, PRIVANDO A LA PARTE RECURRENTE DE SU DÍA EN CORTE.

TERCER ERROR: INCURRIÓ EN ERROR DE DERECHO EL FORO PRIMARIO AL REALIZAR DETERMINACIONES DE CREDIBILIDAD Y ADJUDICAR HECHOS SUSTANTIVOS PARA RESOLVER UNA MOCIÓN DE SENTENCIA SUMARIA OBVIANDO HECHOS ESCENCIALES EN CONTROVERSIA, SIN PERMITIR EL DESCUBRIMIENTO DE PRUEBA NI HABER CELEBRADO UNA VISTA EN SU FONDO PARA RECIBIR PRUEBA TESTIMONIAL Y DOCUMENTAL PARA DIRIMIR LOS MISMOS.

Posteriormente, los Apelados presentaron su "**Alegato en Oposición**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". Batista Valentín v. Sucn. Batista Valentín, 2025 TSPR 93; 216 DPR ___ (2025). Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3; Negrón Castro y otros v. Soler Bernardini y otros, 2025 TSPR 96; 216 DPR ____ (2025).

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 8; Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 677 (2018).

Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". Íd., pág. 54.

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004). De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd. págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia

sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. Ramos Pérez v. Univisión de P.R, 178 DPR 200, 2019 (2010); Carpets & Rugs v. Tropical Reps, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice la sentencia sumaria en casos donde existen elementos subjetivos o de intención. Ramos Pérez v. Univisión de P.R, *supra*, pág. 219.

**B.**

Dispone el Artículo 1536 del Código Civil de 2020, en su parte pertinente, que "[la] persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". 31 LPRA sec. 10801. En cuanto a este precepto y su aplicación, se ha establecido que sólo procede la reparación de un daño cuando se demuestren los siguientes elementos indispensables: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. Inmob. Baleares *et al.* v. Benabe *et al.*, 214 DPR 1109, 1125 (2024); Nieves Díaz v. González Massas, 178 DPR 820, 843 (2010).

En particular, el concepto de daños ha sido definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". López v. Porrata Doria, 169 DPR 135, 151 (2006). En esa misma línea doctrinal, se ha establecido que la culpa o negligencia es la falta del debido cuidado que consiste en no anticipar y prever las

consecuencias racionales de un acto o la omisión de un acto, que una persona prudente y razonable habría previsto en las mismas circunstancias. Nieves Díaz v. González Massas, *supra*, pág. 844; Rivera v. S.L.G. Díaz, 165 DPR 408, 421 (2005); Toro Aponte v. E.L.A., 142 DPR 464, 473 (1997); Ramos v. Carlo, 85 DPR 353, 358 (1962). Respecto a la relación causal, ésta es un componente imprescindible en una reclamación en daños y perjuicios, ya que "es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico." Rivera v. S.L.G. Díaz, *supra*, pág. 422. Del daño culposo o negligente surge el deber de indemnizar que "presupone nexo causal entre el daño y el hecho que lo origina, pues sólo se han de indemnizar los daños que constituyen una consecuencia del hecho que obliga a la indemnización". López v. Porrata Doria, *supra*, pág. 151.

Esto último se refiere a la teoría de causalidad adecuada que rige en nuestro ordenamiento. De acuerdo a ella, no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general. Montalvo v. Cruz, 144 DPR 748, 756 (1998). La jurisprudencia ha sostenido que un daño parece ser el resultado natural y probable de un acto negligente, si después del suceso y mirando retroactivamente dicho acto, tal daño aparece como la consecuencia razonable y ordinaria del acto. Torres Trumbull v. Pesquera, 97 DPR 338, 343 (1969); Estremera v. Inmobiliaria RAC, Inc., 109 DPR 852, 856 (1980). El principio de causalidad adecuada requiere que en todo caso de daños y perjuicios el demandante pruebe que la negligencia del demandado fue la que con mayor probabilidad causó el daño sufrido. Parrilla Báez v. Ranger American of P.R., 133 DPR 263, 270 (1993). De esta forma, un demandado responde en daños si su negligencia por su acción u omisión es la causa próxima del daño, aun cuando no sea la única causa del daño. Velázquez v. Ponce, 113 DPR 39, 45 (1982). Por tanto, la cuestión se reduce a determinar si la ocurrencia del daño era de esperarse en el curso normal de los acontecimientos o si, por el contrario, queda fuera de ese posible cálculo.

**C.**

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. Batista Valentín v. Sucn. José E. Batista Valentín y otros, 216 DPR ___ (2025); 2025 TSPR 93. A base de éste, las partes

contratantes pueden establecer las condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. 31 LPRA sec. 6242. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante debe actuar de buena fe en el cumplimiento de su obligación. 31 LPRA sec. 9754 y 31 LPRA sec. 8983. Es por ello que existe un contrato desde que dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. 31 LPRA sec. 9751.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto determinable y (3) causa lícita. 31 LPRA 6131; 31 LPRA sec. 6142; Díaz Ayala *et al.* v. E.L.A., 153 DPR 675, 690-691 (2001). Consecuentemente, "cuando la ley no designa una forma para la realización de un negocio jurídico, se puede utilizar aquella que se considere conveniente". 31 LPRA sec. 6161.

Ahora bien, en los contratos con prestaciones recíprocas se encuentra implícita la facultad de resolver el contrato por falta de cumplimiento con una obligación principal. 31 LPRA sec. 9823. Esto es, el perjudicado puede reclamar el cumplimiento del contrato o la resolución de la obligación con el resarcimiento de los daños causados. Íd. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. NECA Mortg. Corp. v. A&W Dev. S.E., 137 DPR 860, 875 (1995). Así, nuestro más alto foro ha expresado que:

> La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, *supra*, dispone que el tribunal decretará la resolución si no existen causas

justificadas que le autoricen para señalar un plazo. Íd., págs. 875-876 (cita omitida).

En materia contractual, es norma conocida que "si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras". 31 LPRA sec. 6342. Es por ello que nuestro Tribunal Supremo ha reconocido que cuando los términos de un contrato, sus condiciones y sus exclusiones son claros y específicos, y no dan margen a ambigüedades o diferentes interpretaciones, así deben aplicarse. San Luis Center Apts. *et al.* v. Triple-S, 208 DPR 824, 832 (2022); Rivera Rodríguez v. Rivera Reyes, 168 DPR 193, 212 (2006).

No obstante, cuando de la lectura del texto, las cláusulas no son claras o no permiten una comprensión única de lo acordado, los tribunales estamos llamados a interpretar el contrato partiendo de la verdadera y común intención de las partes. Merle v. West Bend Co., 97 DPR 403, 409-410 (1969). Igualmente, se debe presuponer la "lealtad, corrección y buena fe en su redacción, e interpretarlo de manera tal que lleve a resultados conformes a la relación contractual y que estén de acuerdo con las normas éticas". SLG Irizarry v. SLG García, 155 DPR 713, 726 (2001).

Partiendo de esta premisa, al momento de interpretar el contrato y establecer cuál es la intención de las partes, debemos recurrir a las normas de hermenéutica contractual establecidas en los Artículos 353 al 358 del Código Civil de Puerto Rico, 31 LPRA secs. 6341-6346. En lo específico a la controversia ante nos, el Código Civil establece que, si el negocio jurídico es bilateral, la disposición ambigua debe interpretarse en sentido desfavorable a quien la redactó y en favor de la parte que tuvo menor poder de negociación. 31 LPRA sec. 6346. Por otro lado, las cláusulas del contrato se interpretarán "las unas por medio de las otras, ya pertenezcan al mismo negocio jurídico, ya a negocios jurídicos conexos, y mediante la atribución del sentido apropiado al conjunto". 31 LPRA sec. 6344. Es decir, se analizarán en su totalidad con el propósito de entender su verdadero significado. CNA Casualty of P.R. v. Torres Díaz, 141 DPR 27, 39 (1996).

**III.**

En el presente caso, los Apelantes nos solicitaron la revocación de la *Sentencia Parcial* del TPI mediante la cual se declaró "Ha Lugar" la "**Solicitud de**

**Sentencia Sumaria**" presentada por la Farmacia, Multinational y el señor Navarro González.

Los señalamientos de error esgrimidos están íntimamente relacionados, por lo que se trataran de forma conjunta en la discusión. En síntesis, los Apelantes sostienen que el TPI erró al: (1) desestimar con perjuicio la **"Demanda"** presentada en contra de la Farmacia, Multinational y el señor Navarro González sin la celebración de una vista evidenciaria y al (2) realizar determinaciones de credibilidad y adjudicar hechos sustantivos para resolver una "**Solicitud de Sentencia Sumaria**" obviando hechos esenciales en controversia.

Por su parte, los Apelados sostienen que el accidente se debió a un elemento estructural y que como dueño del inmueble el señor Navarro Caussade respondía por los daños alegados en la "**Demanda**" y, por tanto, solo resta por determinar si se iba a contratar prueba pericial de refutación de los daños físicos y angustias mentales alegadas. Veamos.

Según adelantáramos, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro *a quo*. Una somera lectura de la "**Réplica a Moción de Desestimación**" que presentaron el señor Navarro Caussade e Inversiones Navarro, Inc. revela que la misma no cumple con nuestro ordenamiento jurídico al dejar de refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción. Simplemente, éstos descansaron en meras afirmaciones contenidas en sus alegaciones y tomaron una actitud pasiva, sin presentar contradeclaraciones juradas y/o contradocumentos que pusieran en controversia los hechos presentados por el promovente.

A pesar de esta realidad, del análisis de la prueba que se presentó ante el TPI, determinamos que sobre los siguientes hechos esenciales y pertinentes no existe controversia:

1. El 7 de febrero de 2023, la señora Berríos Rosa sufrió una caída al tropezar con un desnivel al bajarse de su vehículo de motor mientras caminaba en dirección a la Farmacia.

2. A la fecha de los alegados hechos en la "**Demanda**", el señor Navarro Caussade era dueño registral, en pleno dominio, del inmueble descrito como sigue:

Urbana: Solar radicado en el Barrio de Cuatro Calles del término municipal de Arroyo, compuesto de seiscientos setenta y dos metros con seis centímetros cuadrados. En linde, por el NORTE; en cuarenta metros con setenta y un centímetros con el solar vendido a Don Eduardo Rovira Sánchez; por el SUR; en cuarenta metros con sesenta y nueve centímetros con Honorio Martínez; por el ESTE; en dieciséis metros con veinte centímetros con el solar vendido a Don Eduardo Rovira Sánchez y por el OESTE en dieciséis metros con ochenta y cinco centímetros con la Carretera Insular número Tres; el cual contiene un edificio de dos plantas de concreto comercial y residencial. Inscrito al Folio ciento treinta y siete (137) del Folio treinta y dos (32), Finca mil noventa y seis (1,096).

3. En el año 2014, el señor Navarro Caussade y el señor Navarro González otorgaron un contrato de arrendamiento para el arrendamiento del primer piso del edificio antes mencionado, perteneciente al señor Navarro Caussade, en el cual este comparece como arrendador, siendo dueño en pleno del inmueble, y el señor Navarro González comparece como parte arrendataria. El arrendamiento incluía como propiedad arrendada el primer piso del edificio, un almacén ubicado en el mismo y un área de estacionamiento localizada frente al edificio, al cruzar la calle Morse del municipio de Arroyo.

4. En el mes de diciembre del año 2020, los señores Navarro Causade y Navarro González otorgaron un segundo contrato de arrendamiento para darle continuidad al arrendamiento de la propiedad arrendada, esto es, el primer piso, el almacén y el estacionamiento, ya que el término del primero había vencido.

5. La cláusula novena del contrato antes descrito establece lo siguiente:

El Arrendatario mantendrá una póliza de responsabilidad pública general con límites no menores de un millón ($1,000,000.00) por daños a la propiedad ajena, lesiones corporales o muertes por las cuales Arrendatario pueda ser responsable; la misma no podrá ser enmendada, modificada o cancelada sin aviso previo por escrito de treinta (30) días. La póliza incluirá "Hold Harmless Agreement"; a favor de la Arrendadora eximiéndole de toda responsabilidad relacionada con las funciones y trabajos del Arrendatario, de cualquier accidente que surja en el local arrendado a cualquier hora mientras dure el arrendamiento.

6. La cláusula décimo primera del referido contrato dispone lo siguiente:

El arrendatario será responsable de mantener la propiedad inmueble segura para sus clientes eximiendo a la parte Arrendadora de toda responsabilidad relacionada con las funciones y trabajos del Arrendatario, de cualquier accidente que surja en la propiedad arrendada a cualquier hora mientras dure el arrendamiento.

6. La cláusula décimo tercera establece que:

El arrendatario se compromete a mantener la propiedad en buenas condiciones, teniendo que dar un mantenimiento adecuado a la misma.

Establecido lo anterior, nos dirigimos a analizar los señalamientos de error esgrimidos. En resumidas cuentas, los Apelantes sostienen que la Farmacia y el señor Navarro González incumplieron con las obligaciones contractuales contraídas al no mantener la propiedad inmueble segura para sus clientes.

Conforme adelantáramos en los acápites anteriores, en nuestro ordenamiento jurídico procede dictar sentencia sumaria si conforme a la evidencia presentada, no existe controversia real y sustancial en cuanto a hechos esenciales y pertinentes del caso. 32 LPRA, Ap. V, R. 36.3. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 679. Para ello, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia. Íd., pág. 678. Esto es, un tribunal no puede disponer de un caso por la vía sumaria cuando existan hechos fundamentales controvertidos. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.

Tras analizar detenida y comprensivamente los documentos que obran en el expediente, incluyendo la "**Demanda**", la "**Solicitud de Sentencia Sumaria**", su correspondiente *Oposición y la Sentencia Parcial* apelada, hemos arribado a la conclusión de que el TPI erró al disponer de las reclamaciones instadas contra la Farmacia, Multinational y el señor Navarro González por la vía sumaria. Nos explicamos.

De entrada, es menester destacar que del propio expediente surge que, para la fecha de los alegados hechos, existía un contrato de arrendamiento vigente entre el señor Navarro Caussade y el señor Navarro González, mediante el cual este último arrendó no solo el local comercial donde ubica la Farmacia, sino también el almacén y el área de estacionamiento localizada frente al edificio. Más aún, la cláusula décimo primera del referido contrato expresamente dispone que el señor Navarro González sería responsable de mantener la propiedad inmueble segura para sus clientes y relevaría al señor Navarro Caussade de responsabilidad por cualquier accidente ocurrido en la propiedad arrendada durante la vigencia del arrendamiento. Del mismo modo, la cláusula décimo tercera impone al señor Navarro González la obligación de mantener la propiedad en buenas condiciones y brindarle el mantenimiento adecuado.

Así pues, los propios documentos contractuales que obran en autos revelan que el señor Navarro González asumió obligaciones relacionadas con la seguridad y el mantenimiento de la propiedad arrendada. En consecuencia, no podía concluirse, como cuestión de derecho, que la alegada condición peligrosa que provocó la caída de la señora Berríos Rosa recaía exclusivamente bajo la esfera de responsabilidad del arrendador, el señor Navarro Caussade. **Muy por el contrario, el referido contrato plantea interrogantes sustanciales respecto al alcance de las obligaciones asumidas por la Farmacia y su posible responsabilidad por las condiciones de peligrosidad existentes en el área donde ocurrió el accidente. Tampoco encontramos prueba documental en el expediente que demuestre claramente que el lugar en donde ocurrió la caída respondió a un daño estructural inmueble, como lo proponen los Apelados.**

Por otro lado, no nos persuade el razonamiento del foro *a quo* en cuanto a que la reclamación no procede porque la señora Berríos Rosa no había entrado aún al establecimiento ni utilizó un espacio de estacionamiento específicamente designado para la Farmacia. Ello es inconsecuente para determinar la existencia de una causa de acción en daños y perjuicios. **La responsabilidad extracontractual no depende de que la persona perjudicada haya ingresado físicamente al establecimiento comercial, sino de la existencia de un deber jurídico (condición de peligrosidad), su incumplimiento, el daño sufrido y el nexo causal entre ambos**.

De igual forma, tampoco resulta relevante que la alegada caída no estuviera relacionada con las funciones u operaciones propias de la farmacia. Después de todo, las reclamaciones por daños y perjuicios derivadas de condiciones peligrosas en una propiedad no necesariamente guardan relación con la actividad comercial que allí se realiza. **Lo pertinente es determinar quién tenía el deber de mantener el área en condiciones razonablemente seguras y si dicho deber fue incumplido**. Precisamente, esa es la controversia material que permanece sin resolver en el presente pleito.

En suma, somos de la opinión de que el foro de instancia erró al desestimar las reclamaciones instadas contra la Farmacia, Multinational y el señor Navarro González. Esto pues, los documentos que obran en el expediente, lejos de eliminar

toda controversia material de hechos, plantean cuestiones sustanciales respecto a quién correspondía el mantenimiento y la seguridad del área donde alegadamente se encontraba el desnivel que ocasionó la caída de la señora Berríos Rosa. Ante tales circunstancias, la controversia no era susceptible de adjudicación sumaria.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *revocamos* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones